UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
BRIAN CHAMBERS,         :

     Petitioner,      :

    -against-       :

ANTHONY J. ANNUCCI, Acting Commissioner :
of the Department of Corrections and
Community Supervision,      :

     Respondent.     :
----------------------------------------------------------------x

## PETITION FOR A WRIT OF HABEAS CORPUS
## <u>BY A PERSON IN STATE CUSTODY</u>

To the Honorable Judge of the United States District Court for the Eastern District of New York:

### PROCEDURAL HISTORY

1. Petitioner was convicted in the Supreme Court of the State of New York, Richmond County.

2. The date of the judgment of conviction was August 22, 2016.

3. Petitioner was sentenced under multiple counts of the indictment. He was not sentenced on more than one indictment in the same court at the same time.

4. Petitioner is currently on parole under the supervision of the New York State Department of Corrections and Community Supervision, DIN 16-A-3599, while

he serves a term of three to six years imprisonment, with a maximum expiration date of November 27, 2021.[1]

5.     Petitioner was convicted, after a jury trial, of one count of reckless endangerment in the first degree [N.Y. Penal Law § 120.25], one count of reckless endangerment in the second degree [N.Y. Penal Law § 120.20], two counts of reckless driving [N.Y. Vehicle and Traffic Law § 1212], three counts of criminal mischief [N.Y. Penal Law § 145.00(03)], two counts of obstruction of governmental administration in the second degree [N.Y. Penal Law § 195.05], and three counts of leaving the scene of an accident [N.Y. Vehicle and Traffic Law § 0600(01)] (Ozzi, J., at trial and sentencing).

6.     The facts of petitioner's appeal from the judgment are as follows:

(a)     Petitioner appealed his conviction to the Appellate Division of the Supreme Court of the State of New York, Second Department.

(b)     The Appellate Division affirmed petitioner's conviction on January 30, 2019. *People v. Chambers*, 168 A.D.3d 1092 (2d Dept. 2019).  A copy of that decision is attached as Exhibit A.

(c)     Copies of the Brief for Defendant-Petitioner, Respondent's Brief, and the Reply Brief for Defendant-Petitioner are attached as Exhibits B, C, and D.

(d)     Leave to appeal to the New York State Court of Appeals was denied on May 3, 2019, *People v. Chambers*, 33 N.Y.3d 1029 (2019) (DiFiore, C.J.). A copy

---

[1] *See Jones v. Cunningham*, 371 U.S. 236, 240 (1963) (a paroled petitioner is "in custody" because parole restrictions "significantly restrict petitioner's liberty").

of the application papers, the State's response, and the Order Denying Leave are attached collectively as Exhibit E.

7.      Aside from the direct appeal from the judgment, petitioner has not filed any actions with respect to the judgment in any state court.

## STATEMENT OF FACTS

Introduction

Petitioner, Brian Chambers, was convicted of first-degree reckless endangerment and related lesser counts arising from an incident in December 2015, when he led police on a car chase in Staten Island.[2] On December 2, 2015, a group of officers in two unmarked cars had gone to petitioner's address, where they attempted to box in his car while he was driving. But petitioner drove off, striking the front of one of the police cars. The police gave chase and appellant did not pull over, drove in excess of the speed limit, ran red lights, and crossed the double yellow lines while driving through the middle of traffic and around other cars, all in an attempt to evade apprehension. At one intersection, there may have been pedestrians present who stepped away suddenly from the street and several cars had to stop short during the pursuit. Petitioner clipped one car, possibly two during the chase, resulting in minor damage and no injuries.

---

[2]      Petitioner was also convicted under the same indictment of lesser misdemeanor counts for an earlier, similar altercation with police on November 28, 2015, as to which he was acquitted of first-degree reckless endangerment. In the present petition, Petitioner is only challenging his felony conviction of first-degree reckless endangerment for the December 2, 2015 incident.

At trial, defense counsel moved to dismiss the reckless endangerment in the first degree charge since the People failed to demonstrate that petitioner acted with "depraved indifference to human life." The motion was denied and the jury convicted petitioner of that count as to the December 2, 2015 incident. Petitioner was sentenced to three to six years in prison for felony reckless endangerment in the first degree, along with shorter, concurrent sentences on lesser misdemeanor counts. He was released to parole supervision on April 24, 2019 and will remain under supervision until the maximum expiration date of his felony sentence on November 27, 2021.

The Evidence at Trial Regarding the December 2, 2015 Incident

On December 2, 2015, Officers Mirel Hoxha and Nicholas Rentas became aware of an "I-card" associated with petitioner, with whom they were already familiar (254-57, 375, 377).[3] Hoxha and Rentas, in plain clothes and riding in an unmarked police vehicle outfitted with lights and sirens but lacking a dashboard camera, went to petitioner's address at 85 Notre Dame Avenue in Staten Island along with Sergeant Cabello and Officer Nicholas Podaras, who travelled in a separate car (256-58, 357-58, 377-78, 453-55).

When the officers arrived, they observed a dark grey Mazda 6 and a Honda CRV outside the location, the latter of which was associated with the I-card (268, 277, 378-

---

[3] An I-card is not a warrant but an investigation card issued in an internal NYPD database. *See generally* "Crossing the Threshold: An Evaluation of Civilian Complaints of Improper Entries and Searches by the NYPD from January 2010 to October 2015," NYC Civilian Complaint Review Board, available at http://www.nyc.gov/html/ccrb/downloads/pdf/Crossing-the-Threshold-2010-2015.pdf (last accessed June 29, 2020).

79). The officers parked on opposite corners of the street and, after approximately ten to fifteen minutes, saw petitioner walk over to the Mazda and get inside (278-81, 285, 431-37). Petitioner drove up to a stop sign and began to inch over to make a right hand turn (282). As he did, the officers pulled their cars in front and behind him, attempting to box his car in (283, 381-82). Petitioner accelerated to turn right onto Lamoka Avenue and struck the front of Hoxha and Rentas's car, scraping the front bumper and headlight (283, 286, 382, 459).

The two cars of officers pursued petitioner, following him down Lamoka, eventually at a speed of around 60 miles per hour (288, 458-61). Without signaling, petitioner turned onto Brookfield Avenue and then drove through four stop signs without braking or stopping (289-95, 297, 386-89). Petitioner slowed down to make a right onto Arthur Kill without signaling and a car travelling on Arthur Kill braked suddenly (296, 390).

As petitioner approached the intersection of Giffords and Arthur Kill, the light had just turned green and petitioner crossed the double yellow lines, rode that way through the intersection, and then crossed back onto the right side of the road, going about 40 to 50 miles per hour (299-300, 392). At he passed through the intersection of Arthur Kill and Clark, petitioner again crossed the double yellow lines and one or two cars had to swerve to avoid him (301-304, 393-94). Then, petitioner turned right onto Richmond Road without signaling (304-05, 395-96).

At the intersection of Richmond and Light House, petitioner drove around cars on the right side of the road, crossed the double yellow line, and ran the red light, but once again returned to the right side of the road after the intersection, travelling somewhere between 50 and 60 mph (306-308, 401-03). At this point, Podaras and Kinsella's car abandoned the chase but Hoxha and Rentas continued to follow petitioner (464).

At the next intersection of Wilder and Riedel, petitioner again crossed the double yellow lines in order to pass vehicles and then moved back onto the right side of the road (309). In total, petitioner crossed the yellow lines three to four times (309). At the intersection of Richmond Road and Amboy Road, petitioner made a left, at about 40 miles per hour and without signaling, although he had a green light (309-10, 404-05).

As petitioner approached the intersection of Richmond Road and New Dorp Lane, the traffic light was red with cars waiting at the light (312, 405-06). Petitioner slowed in the right lane with one to two cars in front of him and three to four cars in the left lane (312, 405-06). When the officers moved in behind to box him in, petitioner moved his car in between two cars in the left lane (312-13, 405-06). The officers intentionally rammed petitioner's car with theirs when he was stopped, and in response, petitioner began driving again (395-96).

Hoxha claimed that three to four pedestrians walking in the street jumped back onto the sidewalk as a car that was making a left onto Richmond drove onto the sidewalk to avoid petitioner (314-15). Petitioner continued on Richmond Road, driving

around 45 to 50 miles per hour while passing through three intersections – all with green lights (316-17). At certain points, he crossed onto the opposite side of the road or switched lanes without signaling (317, 408).

At the intersection of Richmond and Todt Hill Road, petitioner crossed the double yellow lines, went around several cars stopped at the red light, and turned left without signaling (319-20, 408-09). Hoxha claimed that petitioner drove up Todt Hill Road between the double yellow lines, with cars on either side moving out of the way, (320-21, 361-62). Todt Hill was a very curvy road with cars travelling in both directions, and, according to Hoxha, at some point petitioner sideswiped a minivan and it fishtailed and turned (330-31, 409). Rentas did not see petitioner strike the minivan, only its brake lights come on, and when the officers returned later to the area, the minivan was not there, its driver never called the police, and no accident report was filed (363-64, 410).

At the intersection of Todt Hill and Four Corners, petitioner drove on the opposite side of the road, hugging the double yellow lines, and travelled through the red light (333, 411-12). Then, petitioner sideswiped a dark Ford Explorer and the Explorer pulled over while petitioner continued up Todt Hill at about 40 miles per hour, on top of the double yellow line and between traffic (334, 412-13). At that point, the police called off the pursuit and watched petitioner proceed through a red light before he entered the expressway (336-38, 412-15).

After the pursuit, Hoxha and Rentas found damage to the bumper and the passenger side headlight of their car (339-40, 415, 426-31). The dark Ford Explorer,

which had been driven by an off duty officer, had a dent and some scrapes along the driver's side (341-43).

At the close of the People's case, defense counsel moved to dismiss the counts of reckless endangerment in the first degree for the two incidents as legally insufficient, arguing that reckless driving alone does not establish the required *mens rea* of depraved indifference, relying on New York Court of Appeals precedent, *People v. Maldonado*, 24 N.Y.3d 48 (2017) (504-12). The court denied the motion (528-31). Although the jury acquitted petitioner of reckless endangerment in the first degree for the November 28th incident where petitioner also hit a police car and lead the police on a car chase, the jury convicted petitioner of reckless endangerment in the first degree for the December 2nd incident and all other charges (684).

Appeal and Appellate Division Decision

On appeal, petitioner strongly argued that his conviction for first-degree reckless endangerment was legally insufficient since the People had failed to establish that he had acted with "depraved indifference to human life" – a *mens rea* that is extremely rare and requires a showing that a defendant's conduct demonstrated "utter disregard for human life." (Exhibit B). In support of his argument, petitioner relied on numerous, controlling cases from the New York Court of Appeals in which reckless driving during a police chase where the defendant actively tried to mitigate the risk by avoiding cars and pedestrians was found to be insufficient to meet that standard (*Id.*). Petitioner noted that even in cases where bystanders have been killed or injured, depraved indifference

8

was not proven where the defendant attempted to avoid hitting cars and pedestrians (*Id.*).

On January 30, 2019, the Appellate Division, Second Department, affirmed petitioner's conviction for reckless endangerment in the first degree. *People v. Chambers*, 168 A.D.3d 1092 (2d Dept. 2019).  Summarizing the record, the court observed:

> [t]he testimony of the pursuing police officers established that, during the lengthy pursuit of approximately 5.5 miles through city streets, the defendant's vehicle struck a police vehicle, the defendant drove through numerous stop signs and red lights at dangerously excessive speeds, and he repeatedly drove in the opposing lane of travel. The police officers further testified that the defendant caused pedestrians and other automobiles to leave the road to avoid being struck, that his vehicle sideswiped two additional moving vehicles, and that he drove down the middle of a narrow, winding, two-lane road, causing vehicles traveling in both directions to move out of his way to avoid his vehicle.

*Id.* at 1093. In a single sentence, the court held that this evidence "was legally sufficient to establish the defendant's guilt of reckless endangerment in the first degree beyond a reasonable doubt." *Id.* (internal citations omitted). The court did not cite or make any mention of the numerous New York Court of Appeals decisions petitioner had relied on in his brief that were directly on point and contrary to the result in this case. Without providing any analysis, the court cited to only two of its own cases – *People v. Walker*, 258 A.D.2d 541 (2d Dept. 1999), and *People v. Williams*, 150 A.D.3d 1273 (2d Dept. 2017). *See Chambers*, 168 A.D.3d at 1093.

Petitioner timely sought leave to appeal to the New York Court of Appeals, arguing, as he did before the Appellate Division, that the State failed to prove his guilt of reckless endangerment in the first-degree beyond a reasonable doubt because there was no proof he acted with the *mens rea* of depraved indifference (Exhibit E).  On May 3, 2019, Chief Judge DiFiore denied petitioner leave to appeal. *People v. Chambers*, 33 N.Y.3d 1029 (2019). On April 24, 2019, petitioner was released from Coxsackie Correctional Facility to the Division of Parole. He will remain subject to the conditions of his parole until the expiration date of his sentence on November 27, 2021.

## THE REASON WHY THE WRIT MUST BE GRANTED

A conviction for reckless endangerment in the first degree in New York requires that the State meet the high bar of proving both that the circumstances evinced a "depraved indifference to human life" and that the defendant recklessly engaged in conduct which created "a grave risk of death to another person." N.Y. Penal § 120.25. Here, petitioner was convicted of reckless endangerment in the first degree for the December 2 incident, notwithstanding that, at most, he clipped two cars, resulting in minimal damage; slowed down at times; and purposefully attempted to avoid other cars, all of which demonstrated that he did not act with depraved indifference to human life. On analogous, if not far more egregious facts, the New York Court of Appeals has repeatedly held that the evidence did not establish the rare *mens rea* of depraved indifference to human life, and the Appellate Division's decision here upholding

petitioner's conviction ignored this well-established precedent.   Since petitioner's conviction under these circumstances violated his constitutional right to be convicted only upon proof beyond a reasonable doubt, and the affirmance of that conviction was an unreasonable application of clearly established federal law as determined by the United States Supreme Court, this Court should grant the petition. U.S. Const., Amend. V, XIV; *Jackson v. Virginia*, 443 U.S. 307 (1979).

As relevant here, a state prisoner is entitled to federal habeas corpus relief if the conviction at issue "was contrary to, or involved an unreasonable application of, clearly established law, as determined by the Supreme Court." 28 U.S.C. § 2254(d). When the issue raised is whether the evidence was sufficient to sustain the State's burden of proof, the applicable Supreme Court standard is that of *In re Winship*, 397 U.S. 358 (1970), as construed by *Jackson v. Virginia*, 443 U.S. 307 (1979): "[t]he standard of review of a sufficiency claim by a federal habeas court is 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Wheel v. Robinson*, 34 F.3d 60, 66 (2d Cir. 1994) (quoting *Jackson*, 443 U.S. at 319); *accord Santone v. Fischer*, 689 F.3d 138, 148 (2d Cir. 2012) (*Jackson* governs the review of federal habeas challenges to state convictions on sufficiency grounds). Accordingly, a claim that the evidence was insufficient to establish proof of reckless endangerment in the first degree is thus cognizable under AEDPA, with the essential question being whether the state courts'

finding of sufficient evidence of depraved indifference was an unreasonable application of the *Winship/Jackson* rule. *Policano v. Herbert*, 507 F.3d 111, 115-116 (2d Cir. 2007).

"When it considers the sufficiency of the evidence of a state conviction, '[a] federal court must look to state law to determine the elements of the crime.'" *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 811 (2d Cir. 2000) (quoting *Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir. 1999), *cert. denied*, 528 U.S. 1170 (2000)).  Under New York law, "A person is guilty of reckless endangerment in the first degree when, under circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person." N.Y. Penal Law § 120.25. While the act itself is relevant, "depraved indifference to human life is a culpable mental state." *People v. Feingold*, 7 N.Y.3d 288, 294 (2006).[4]

Depraved indifference is "best understood as an utter disregard for the value of human life – a willingness to act not because one intends harm, but because one simply doesn't care whether grievous harm results or not." *Feingold*, 7 N.Y.3d at 296. It is embodied in conduct that is "so wanton, so deficient in a moral sense of concern, so devoid of regard of the life or lives of others, and so blameworthy as to warrant the same criminal liability as that which the law imposes upon a person who intentionally

---

[4] Apart from the *actus reus*, second degree depraved indifference murder, first degree depraved indifference assault, and first degree reckless endangerment all require proof under New York State law of "circumstances evincing a depraved indifference to a human life." *See* N.Y. Penal Law §§ 120.10(3), 120.25, 125.25(2). For this reason, the New York Court of Appeals has recognized that this element has the same meaning in all three statutes. *See Feingold*, 7 N.Y.3d at 290 n.1; *People v. Suarez*, 6 N.Y.3d 202, 225 (2005) (Graffeo, J., concurring and dissenting in part).

causes [serious physical injury] to another." *People v. Suarez*, 6 N.Y.3d 202, 211 (2005). "In other words, a person who is depravedly indifferent is not just willing to take a grossly unreasonable risk to human life – that person does not care how the risk turns out. This state of mind is found only in rare cases." *People v. Lewie*, 17 N.Y.3d 348, 359 (2011).

Drawing on its extensive precedent on what constitutes the *mens rea* of depraved indifference, in *People v. Maldonado*, 24 N.Y.3d 48 (2014), the New York Court of Appeals articulated a clear rule that, in the context of a reckless driving case, depraved indifference cannot be proven where the record shows the "defendant *sought to mitigate the consequences of his reckless driving*"—e.g. by attempting to avoid hitting cars or pedestrians. *Id.* at 53-54 (emphasis added). Such conduct fails to demonstrate an "utter disregard for human life," rendering the evidence legally insufficient to sustain a conviction where depraved indifference is the required mental state. *Id.* at 55-56.

In *Maldonado*, the defendant stood trial for depraved indifference murder after he led the police on a high speed chase through a populated area and eventually struck and killed a pedestrian. *See id.* at 50-51. Nevertheless, the defendant's actions were legally insufficient to establish depraved indifference because:

> Although [he] drove on the wrong side of the road, this conduct was episodic and part of his effort to avoid other vehicles while evading the police. *This conscious avoidance of risk is the antithesis of a complete disregard for the safety of others.* Defendant was unquestionably reckless, but he was not depravedly indifferent as we have defined and interpreted that state of mind. [...] [W]e conclude that, given this

>     evidence, a rational jury could not have reasonably found
>     depraved indifference beyond a reasonable doubt.

*Maldonado*, 24 N.Y.3d at 54 (emphasis added).

The *Maldonado* decision succinctly summarized what amounts to depraved indifference in reckless driving cases based on well-established authority from the New York Court of Appeals, including three cases decided together: *People v. Heidgen*, *People v. Taylor*, and *People v. McPherson*, 22 N.Y.3d 259 (2013), as well as *People v. Prindle*, 16 N.Y.3d 768 (2011).  In each of those cases, the Court of Appeals ruled that evidence the defendant did, or did not, seek to avoid hitting other vehicles was dispositive in determining whether the *mens rea* of depraved indifference had been proven. *Compare Heidgen*, 22 N.Y.3d at 267 (deprived indifference proven where three defendants drove a significant distance in the wrong direction and did not swerve to avoid other vehicles); *Taylor*, 22 N.Y.3d at 271-72 (same, where defendant sped without headlights on the wrong side of the road and made no attempt to swerve); *McPherson*, 22 N.Y.3d at 273 (counsel not ineffective for failing to seek dismissal of depraved indifference murder charge because motion would have been unsuccessful, since defendant travelled 5 miles in the wrong direction and made no attempt to brake or avoid other vehicles), *with Prindle*, 16 N.Y.3d at 769-71 (deprived indifference not proven where defendant drove at excessive speed, ran red lights, and drove the wrong way on one-way streets, but nonetheless swerved to avoid hitting other cars or pedestrians).

The *Maldonado* Court made clear that its conclusion that the evidence there was insufficient to prove depraved indifference was compelled by its own precedent, *Heidgen* and *Prindle* especially. *See Maldonado*, 24 N.Y.3d at 54-56. The Court emphasized that, "[u]nlike the defendants in *Heidgen*, [Maldonado] never tracked or followed the movements of any driver, nor did he purposefully impede another driver's efforts to avoid a collision"; rather, he "drove in the wrong lane for brief periods of time in order to pass other cars, . . . immediately returned to the proper lane once clear of congestion in order to avoid hitting other vehicles[,]" and "repeatedly tried to avoid collisions while evading capture by the police." *Maldonado*, 24 N.Y.3d at 54-55. Similarly, the Court observed that, "[l]ike the defendant in *Prindle*, [Maldonado] here drove through a populated area, exceeded the speed limit, ran red lights, swerved across double-yellow lines into oncoming traffic, and drove the wrong way on one-way streets," yet nonetheless "swerved to avoid hitting other cars or pedestrians," which, "as in *Prindle*," showed that his conduct "did not evince an utter disregard for human life." *Id.* at 55-56 (internal quotation marks omitted).

Therefore, because the defendant "actively attempt[ing] to avoid hitting other vehicles by swerving," the evidence was insufficient to prove depraved indifference, *Maldonado*, 24 N.Y.3d at 53-54 (internal quotation marks omitted), a conclusion the Court of Appeals acknowledged was simply a straightforward application of previous case law, *see id.* at 52-53 (*citing People v. Lewie*, 17 N.Y.3d 348 [2011], *People v. Feingold*, 7 N.Y.3d 288 [2006], *People v. Suarez*, 6 N.Y.3d 202 [2005]).  Notably, this rule for when

15

depraved indifference can be established in reckless driving cases has been consistently applied by New York's lower courts. *See, e.g.*, *People v. Williams*, 150 A.D.3d 1273 (2d Dept. 2017) (depraved indifference proven where defendant was drunk and high, there was no evidence he made any effort to slow down or avoid hitting another vehicle, and he hit another car at such a high speed that the car broke in half, killing a man).

Here, petitioner's conduct during the December 2nd incident was unquestionably very serious, and surely reckless, but the State's evidence was insufficient to prove that he acted with the required mental state of depraved indifference under clearly established New York authority While the testimony of Officers Hoxha and Rentas described how petitioner drove at high speeds, failed to signal, and crossed the double yellow lines (289-310, 386-96, 404-05), it also established that petitioner consciously, and consistently, sought to lessen the risks caused by his actions. Although some cars moved out of the way, appellant clearly made attempts to avoid cars travelling on both sides of the road by driving in the middle of the road over the yellow lines at approximately 40 miles per hour, a controllable speed (319-36; 408-15). While petitioner "scrap[ed] the Ford Explorer (480-81) and possibly may have sideswiped a minivan (330-31, 363-64; 409-10), those actions were entirely consistent with his attempts to avoid cars. Indeed, the testimony of the police officers here was identical to that in *Maldonado*, where "[s]everal witnesses testified that defendant swerved to avoid hitting other cars or pedestrians." *Maldonado* 24 N.Y.3d at 56.

In fact, precisely as in *Maldonado*,

> [petitioner] drove in the wrong lane for brief periods of time in order to pass other cars, not as part of a deadly game. He immediately returned to the proper lane once clear of congestion in order to avoid hitting other vehicles. Eyewitness testimony established that he repeatedly tried to avoid collisions while evading capture by the police. Although defendant swerved around cars and across lanes of traffic, he did so both to speed his flight and to avoid crashing into other vehicles and pedestrians.

*Maldonado*, 24 N.Y.3d at 54-55; *accord id.* at 55-56 (analogous facts in *Prindle* did not make out depraved indifference). Consequently, the People's evidence overwhelmingly established that petitioner *consciously sought to mitigate the risk* of his reckless driving by "'actively attempt[ing] to avoid hitting other vehicles' by swerving, conduct which establishes a lack of depraved indifference." *Maldonado*, 24 N.Y.3d at 53-54 (quoting *Heidgen*, 22 N.Y.3d at 276). In fact, the only difference between the circumstances here and those of *Maldonado* and *Prindle*, is that petitioner's conduct did not result in any injuries or deaths – demonstrating that he not only consciously sought to mitigate the risk of his actions, but was even more successful in doing so than the defendants in those other cases, where, nevertheless, the evidence was still insufficient to prove depraved indifference.  And, while petitioner may have nearly missed pedestrians or other vehicles, causing them to leave the roadway, this is inconsequential because "attempting to avoid a collision with others, even if done in a reckless manner, is insufficient proof of depraved indifference." *Maldonado*, 24 N.Y.3d at 56 n.2; *see id.* at 56 ("near-miss of a pedestrian" did not prove depraved indifference since it too was the result of the defendant's "efforts to the swerve away from traffic and avoid collisions").

Accordingly, on this record, no rational factfinder could have found that petitioner acted with depraved indifference. Petitioner's conduct, while no doubt reckless, was nonetheless considerably less dangerous than circumstances where the New York Court of Appeals has consistently held that the defendant did not act with depraved indifference. And, whatever the risk of injury from petitioner's actions, it was uncontested that petitioner appreciated and actively sought to mitigate that risk by repeatedly slowing, stopping at times, and maneuvering around other cars – thereby negating any conclusion that he "d[id] not care how the risk turns out," which made proof of depraved indifference necessarily insufficient. *Lewie*, 17 N.Y.3d at 359.

The Appellate Division's ruling to the contrary in petitioner's case completely, and unreasonably, ignored the clear and unambiguous holdings of the New York Court of Appeals on this issue, which defense counsel had relied on at trial and the parties had argued at length on appeal. The Appellate Division instead relied solely on its own case law in ruling that the evidence was sufficient to prove depraved indifference, citing *Williams*, 150 A.D.3d 1273, and *People v. Walker*, 258 A.D.2d 541 (2d Dep't 1999). In *Williams*, however, the defendant, drunk and high, never slowed down as he approached stop signs and red lights, and directly collided with another vehicle at over 80 miles per hour and with such force that the other car was split into two and the driver instantly killed. *See id.* at 1276-78. These facts are completely distinguishable from those here, since, as the *Williams* Court emphasized, the defendant there "made [no] effort to avoid hitting other vehicles during the chase," unlike petitioner. *Id.* at 1277. Likewise, in

*Walker*, the defendant drove 80 to 100 miles per hour towards oncoming traffic and through stop signs and lights, with no evidence that he sought to mitigate the risk of his reckless driving. *See id.* at 541. Regardless, that case was decided 18 years earlier and pre-dated the most recent, binding Court of Appeals authority in *Maldonado*, 24 N.Y.3d at 54, *Heidgen*, 22 N.Y.3d at 267, and *Prindle*, 16 N.Y.3d at 769-71, under which the State's proof of depraved indifference in petitioner's case was clearly insufficient.

All of this makes readily apparent that in affirming petitioner's conviction, the Appellate Division simply refused to apply the governing law on legal sufficiency as expounded by New York's highest court. Its determination that appellant's conviction for reckless endangerment in the first degree was legally sufficient was thus an unreasonable application of clearly established federal law under *Jackson*, 443 U.S. at 316, and *In re Winship*, 397 U.S. at 364. Accordingly, this Court should grant Mr. Chambers's petition, reverse his conviction of first-degree reckless endangerment and dismiss that count, and order that he be released from the custody of the New York Department of Corrections and Community Supervision.

## PETITIONER'S ENTITLEMENT TO A WRIT OF HABEAS CORPUS

A.   Exhaustion

Petitioner's constitutional Due Process claim was fully exhausted in the state courts. Defense counsel specifically argued at the close of the State's case at trial that there was insufficient evidence of petitioner's guilt of reckless endangerment in the first

degree because the fact petitioner sought to mitigate the risk of his reckless driving negated the required *mens rea* of depraved indifference (504-12).  Denying this claim, the trial court ruled that the facts presented were legally sufficient to make out this element (528-31).  Citing the Fourteenth Amendment of the United States Constitution, *Jackson v. Virgina*, 443 U.S. 307 (1979), and *In re Winship*, 397 U.S. 358, 364 (1970), petitioner raised the same claim in the Appellate Division (Exhibit B at 21-27), and that court rejected that argument on the merits (Exhibit A).

In his application for leave to appeal to the Court of Appeals, petitioner sought review of all state and federal constitutional issues raised in his briefs, but specifically emphasized the legal sufficiency claim at issue here, describing for seven pages how the Appellate Division decision was contrary to clear precedent from the New York Court of Appeals on depraved indifference, under which the evidence was legally insufficient to convict appellant of reckless endangerment in the first-degree (Exhibit E – Letter dated March 12, 2019).

B.     Timeliness

Since this petition has been filed within 1 year and 90 days of the date petitioner's state appeal became final, when leave to appeal to the Court of Appeals was denied on May 3, 2019, it is timely (see Exhibit E). *Jiminez v. Quarterman*, 555 U.S. 113 (2009); *Ross v. Artuz,* 150 F.3d 97, 98 (2d Cir. 1998).

C.     AEDPA Standard of Review

As relevant here, the Antiterrorism and Effective Death Penalty Act of 1996

("AEDPA") provides that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

Here, the Appellate Division's decision – the operative state court decision – was an "unreasonable application" of clearly established law as determined by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307 (1979) and *Cupp v. Naughten*, 414 U.S. 141 (1973). A state court unreasonably applies federal law when it "'correctly identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case,' or refuses to extend a legal principle that the Supreme Court has clearly established to a new situation in which it should govern." *Hoi Man Yung v. Walker*, 468 F.3d 169, 176 (2d Cir. 2006) (quoting *Williams v. Taylor*, 529 U.S. 362, 413 (2000)). The issue is not whether all reasonable jurists would agree that there was error, but rather there was "some increment of incorrectness beyond" mere error, *Howard v. Walker*, 406 F.3d 114, 122 (2d Cir. 2005) (quoting *Williams*, 529 U.S. at 411), which "need not be great." *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000); *see Jimenez*, 458 F.3d at 147. "[A] state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and

comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

Accordingly, this Court has the power to issue a writ of habeas corpus on petitioner's due process claim. The Appellate Division's ruling amounts to an unreasonable application of clearly established federal law concerning a defendant's Due Process right to be convicted only upon proof beyond a reasonable doubt, since, for the reasons stated above, there can be no fairminded disagreement that the evidence was legally insufficient to prove the requisite *mens rea* of depraved indifference to convict petitioner of reckless endangerment in the first degree.

## RELIEF REQUESTED

For the reasons set forth above, this Court should grant the petition and order respondent to release petitioner.

WHEREFORE, Petitioner prays that this Court:

(1)     Issue a writ of habeas corpus;

(2)     Order respondent to discharge petitioner from his unconstitutional custody, and;

(3) Grant petitioner such other and further relief as may be just and proper.

Respectfully submitted,

PAUL SKIP LAISURE (PL 5560)
Attorney for Petitioner

By:     MARK W. VORKINK (MV 3472)
APPELLATE ADVOCATES
111 John Street, 9th Floor
New York, New York 10038
(212) 693-0085, ext. 549

Rebecca J. Gannon, on the brief

July 30, 2020