UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

BRIAN CHAMBERS,                            :

                      Petitioner,          :          **MEMORANDUM DECISION**

              - v -                :          20-cv-3429 (DC)

DANIEL F. MARTUSCELLO III,                 :
Commissioner of the Department
of Corrections and Community Supervision,  :

              Respondent.[1]       :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

APPEARANCES:             MARK W. VORKINK, Esq.
                         Appellate Advocates
                         111 John Street, 9th Floor
                         New York, New York 10038
                         Attorney for Petitioner

                         MICHAEL McMAHON, Esq.
                         District Attorney, Richmond County
                         By:    Alexander Fumelli, Esq.
                                Assistant District Attorney
                         130 Stuyvesant Place
                         Staten Island, New York 10301
                                Attorney for Respondent

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Daniel F. Martuscello III, who was appointed as Commissioner of the New York State Department of Corrections and Community Supervision on May 23, 2024, is substituted for the former Acting Commissioner, Anthony J. Annucci.  The Clerk of Court shall amend the official case caption to conform to the above.

CHIN, Circuit Judge:

On August 22, 2016, following a jury trial, Petitioner Brian Chambers was convicted in the Supreme Court of the State of New York, Richmond County (Ozzi, *J.*), of reckless endangerment in the first and second degrees as well as other crimes related to two high-speed car chases: one on November 28, 2015, and the other on December 2, 2015. He was acquitted on the first-degree reckless endangerment count related to the November 28, 2015 chase. Dkt. 9-13 at 65-72. The court determined that Chambers was a second-felony offender and sentenced him to three to six years of imprisonment. Dkt. 9-15 at 3-4, 13-16. The Appellate Division, Second Department, affirmed Chambers's convictions, *People v. Chambers*, 92 N.Y.S.3d 396 (2d Dep't. 2019) ("*Chambers I*"), and the New York Court of Appeals denied leave to appeal, *People v. Chambers*, 126 N.E.3d 162 (N.Y. 2019) (DiFiore, *C.J.*) ("*Chambers II*").

On July 30, 2020, Chambers, represented by counsel, petitioned this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (the "Petition"). Dkt. 1. Chambers contends that the Appellate Division's determination that his conviction of reckless endangerment in the first degree was based on sufficient evidence is an unreasonable application of clearly established federal law as determined by the United States Supreme Court. *Id.* at 11. Specifically, he argues that the evidence presented at trial regarding the high-speed car chase on December 2, 2015, was insufficient to convict him of reckless endangerment in the first degree, which requires the People to establish

that he acted with "depraved indifference to human life." *Id.* at 11, 16; *see also* N.Y. Penal Law § 120.25.  On October 19, 2020, the Richmond County District Attorney's Office opposed the Petition.  Dkt. 8.  Shortly thereafter, Chambers filed his reply.  Dkt. 10.

On March 19, 2024, the case was reassigned to the undersigned.

For the reasons that follow, the Petition is DENIED.

## STATEMENT OF THE CASE

**A.   *The Facts[2]***

The evidence at trial established the following:

Chambers was charged in a fourteen-count indictment; two of the counts were reckless endangerment in the first degree.  The counts of reckless endangerment stemmed from two high-speed car chases: one on November 28, 2015, and the other on December 2, 2015.  Dkt. 9-13 at 64-67.

On November 28, 2015, at around 8:35 p.m., Chambers, driving a Honda CR-V from Canal Street onto Broad Street in Staten Island, NY, failed to use his right turn signal.  Dkt. 8 at 3.  He then turned left onto Gordon Street and double-parked on the right side of the street.  *Id.*  NYPD Detective Arthur Truscelli and NYPD Sergeant Andrew Kinsella followed Chambers in an unmarked Black Mazda.  They were aided

---

[2] The facts are drawn primarily from Respondent's opposition memorandum, which provides detailed citations to the trial transcripts.  Dkt. 8.  The evidence at trial is construed in the light most favorable to the prosecution.  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  Although Chambers was acquitted of the first-degree reckless endangerment count based on the November 28, 2015 car chase, he was convicted on several other counts related to that chase.

3

by NYPD Detectives Clyde Moyer and David Luppino, who drove together in an unmarked Dodge minivan.  *Id.*  Because of Chambers's traffic violation, Sergeant Kinsella and the detectives planned to conduct a "'tactical car stop' by which two police cars would surround [Chambers's] vehicle" -- one in the front and one in the back -- and block it in.  *Id.*

Detective Truscelli pulled his car in front of Chambers's car, and Detective Moyer, with his car's flashing lights, parked his car behind Chambers's car.  *Id.* at 4.  As Sergeant Kinsella began to step out of the front-passenger door of Detective Truscelli's car, Chambers revved his car's engine and "sped through the small space" between Detective Truscelli's car and the adjacent parked cars.  *Id.*  As a result, Sergeant Kinsella's "open door was knocked all the way forward from the impact of [Chambers's] passing car, and the Mazda shook."  *Id.*  Detective Truscelli and Sergeant Kinsella, traveling 50 miles per hour, pursued Chambers.  *Id.*

Chambers "turned right from Gordon Street onto Laurel Avenue, tapping on his brakes and accelerating through a stop sign without using his tu[rn] signal."  *Id.* He then turned right from Laurel Avenue onto Targee Street, a street with pedestrians. Again, Chambers failed to brake or use his turn signal fully.  Chambers accelerated to 50 to 60 miles per hour and drove through a red light on Targee Street, which has a posted speed limit of 25 miles per hour.  *Id.*  Chambers's speed forced a car entering the intersection with a green light to "slam on its brakes."  *Id.* at 5.

4

Detective Truscelli and Sergeant Kinsella -- who followed Chambers with their flashing lights activated through Gordon Street, Laurel Avenue, and Targee Street -- abandoned their pursuit.  They determined that it was too dangerous to continue.  *Id.*  Shortly thereafter, Detective Truscelli created a database entry for Chambers related to the car chase.  Generally, a database entry contains an individual's pedigree information in police records, which flags that the individual is wanted for questioning or arrest regarding an incident.  *Id.*

Four days later, on December 2, 2015, at around 7:15 p.m., NYPD Sergeant Cabello and NYPD Officers Nicholas Podaras, Mirel Hoxha, and Nicholas Rentas arrived at 85 Notre Dame Avenue in Staten Island in two unmarked police cars; they had been alerted to Chambers's possible presence as a result of the database entry.  Dkt. 9-11 at 16-17, 19-21.  Sergeant Cabello and Officer Podaras traveled in one unmarked police car, and Officers Hoxha and Rentas traveled in the other.  *Id.* at 19-21.  They saw Chambers enter a dark gray Mazda 6 ten to fifteen minutes after their arrival.  *Id.* at 42-44.  Chambers drove off, and as he reached the intersection of Notre Dame Avenue and Lamoka Avenue, the officers tried to box in his Mazda with their two cars.  *Id.* at 44-45.  Chambers accelerated to turn right onto Lamoka Avenue and struck Officers Hoxha and Rentas's car head-on, scraping its headlight and front bumper.  *Id.* at 45, 48.

Notwithstanding the collision, Chambers drove off down Lamoka Avenue.  Sergeant Cabello and the officers pursued him with their lights and sirens

engaged.  *Id.* at 49-52.  Without using his turn signal, Chambers turned onto Brookfield Avenue, a residential street, before driving past four stop signs, without stopping or breaking, at 40 to 50 miles per hour.  *Id.* at 51-57.  Chambers slowed down to make a right turn onto Arthur Kill Road; however, he failed to signal, causing a car on Arthur Kill Road to break suddenly at the intersection.  *Id.* at 58-59.

At the intersection of Arthur Kill Road and Giffords Lane, ten to fifteen parked cars were lined up ahead of Chambers, and five to seven cars in the opposite traffic lane were about to cross the intersection.  *Id.* at 59-61.  As the light turned green, Chambers went around the left side of the parked cars at 45 to 50 miles per hour, crossing the double-yellow lines to drive in the oncoming traffic lane past the intersection.  *Id.* at 61-62.  About eleven blocks later, at the intersection of Arthur Kill Road and Clarke Avenue, with about ten cars in each of the two lanes ahead of him, Chambers entered the oncoming traffic lane at 40 or 45 miles per hour, causing an oncoming car to swerve out of his way and hit the curb.  *Id.* at 63-66.  When Chambers stopped to turn onto Richmond Road without using his turn signal, Officer Rentas rear-ended Chambers's Mazda.  *Id.* at 158; Dkt. 9-12 at 3-4.  Chambers continued to drive. Dkt. 9-11-at 67-70; Dkt. 9-12 at 4-5.

Five blocks later, at the intersection of Richmond Road and Lighthouse Avenue, with cars stopped before him, Chambers again entered the oncoming traffic lane, returning to his lane only after he ran a red light to cross the intersection.  Dkt. 9-

11 at 68-70.  At this point, Chambers was driving at 55 to 60 miles per hour.  *Id.* at 70.

Shortly thereafter, Officer Podaras abandoned the chase while Officers Hoxha and

Rentas continued.  Dkt. 9-12 at 68.  Over the following twenty blocks on Richmond

Road, Chambers entered the oncoming traffic lane three or four times to avoid slowed

or stopped cars.  At one point, he ran a red light.  Dkt. 9-11 at 70-72.

   At the intersection of Richmond Road and Amboy Road, Chambers

turned left onto Amboy Road using the right-turn lane.  Dkt. 9-12 at 8-11.  He did so

without signaling, cutting off another driver in the left-turn lane.  *Id.*  As he reached the

intersection of Amboy Road and New Dorp Lane, Chambers slowed down and opted

for the right-side lane, with fewer cars.  When Officers Hoxha and Rentas pulled up

behind him, Chambers crossed the double-yellow lines onto the left-side lane and

maneuvered his Mazda between two cars.  Dkt. 9-11 at 73-75.  As a result, three or four

pedestrians about to cross the street jumped back onto the sidewalk, and an oncoming

car drove onto the sidewalk.  *Id.* at 75-78.  At this point, Chambers was driving at 45 to

50 miles per hour.  *Id.* at 78.

   Over the following nine blocks, Chambers crossed onto the oncoming

traffic lane several times to avoid slowed or stopped cars.  *Id.* at 79-80.  At the

intersection of Amboy Road and Todt Hill Road, a winding residential road where

traffic flows in both directions, Chambers crossed the double-yellow lines and turned

left at a red light without signaling.  *Id.* at 81-84.  On Todt Hill Road, Chambers drove in

the middle of the street, between the double-yellow lines, as cars traveling in both directions swerved out of his way.  *Id.* at 82-84.  Chambers sideswiped a minivan, which almost fishtailed into Officers Hoxha and Rentas's car.  *Id.* at 92-94.

On Four Corners Road, Chambers ran a red light and sideswiped the car of Officer Stephanie Bowman, an off-duty officer.  Dkt. 9-12 at 16; Dkt. 9-20 at 12-17.  Officer Bowman heard a loud scraping sound.  Dkt. 9-20 at 18-19.  Her car was knocked to the side, sustaining scratch marks on the driver's side and a dent in its rear.  *Id.*  Chambers then continued driving at 40 to 50 miles per hour.  *Id.* at 17.  When Officer Hoxha radioed his supervisor about Chambers's conduct and the two sideswipes, his supervisor instructed him to stop pursuing Chambers.  Dkt. 9-11 at 98.  Officer Hoxha complied.  *Id.* at 98-99.  Chambers, running a red light, then drove toward the Staten Island Expressway at around 60 miles per hour.  *Id.* at 99-101.

The next evening, Officer Hoxha found Chambers's Mazda near Colon Avenue and Arthur Kill Road.  *Id.* at 111-17.  The Mazda had a damaged headlight on the driver's side, a detached mirror on the passenger's side, and scrapes and scratches all over its body.  *Id.*  On December 4, 2015, at 2 a.m., Officer Hoxha arrested Chambers at 85 Notre Dame Avenue.  *Id.* at 117-18.

**B.**    *Procedural History*

**1.**    *State-Court Proceedings*

**a.**    *The Trial, Conviction, and Sentence*

Trial commenced on July 13, 2016.  Dkt. 6 at 5.  At the close of the People's case, Chambers moved to dismiss the two counts of reckless endangerment in the first degree: one for the chase on November 28, 2015, and the other for the chase on December 2, 2015.  He argued that the evidence was insufficient to support a conviction on either count.  Dkt. 1 at 8.  He further argued that reckless driving, without more, does not establish depraved indifference -- the requisite mens rea for first-degree reckless endangerment under New York law.  *Id.*  The court denied the motion.  *Id.* Chambers did not present a defense case.  Dkt. 6 at 13.

On July 25, 2016, the jury returned its verdict.  Dkt. 9-13 at 64.  It acquitted Chambers on the first-degree reckless endangerment count related to the November 28, 2015 chase.  *Id.* at 65-66.  But it convicted Chambers of the following:

- with respect to the November 28, 2015 chase: (1) reckless endangerment in the second degree, (2) reckless driving, (3) criminal mischief in the fourth degree, (4) obstructing governmental administration in the second degree, and (5) leaving the scene of an accident without reporting it, *id.*, and

- with respect to the December 2, 2015 chase: (1) reckless endangerment in the first degree, depraved indifference to human life, (2) reckless driving, (3) two counts of criminal mischief in the fourth degree, (4) obstructing governmental administration in the second degree, and (5) two counts of leaving the scene of an accident without reporting it, *id.* at 66-69.

At sentencing on August 22, 2016, the court determined that Chambers was a second-felony offender and sentenced him to three to six years of imprisonment, Dkt. 9-15 at 3-4, 13-16. The court entered judgment the same day, Dkt. 9-16 at 1.

**b.**    *The Direct Appeal*

Chambers appealed his conviction to the Appellate Division, Second Department. *Id.* He argued that the evidence at trial was insufficient to support a conviction of reckless endangerment in the first degree for the December 2, 2015 high-speed car chase because the People failed to establish that he acted with the depraved indifference to human life as required under New York Penal Law § 120.25. Dkt. 8 at 2. On January 30, 2019, the Appellate Division affirmed Chambers's conviction for reckless endangerment in the first degree, holding that the evidence was "legally sufficient to establish [his] guilt . . . beyond a reasonable doubt." *Chambers I*, 92 N.Y.S.3d at 397 (citations omitted). On May 3, 2019, the New York Court of Appeals (DiFiore, *C.J.*) denied Chambers's application for leave to appeal. *Chambers II*, 33 N.E.3d at 162.

**2.**    *The Petition*

On July 30, 2020, Chambers, represented by counsel, filed the Petition pursuant to 28 U.S.C. § 2254. Dkt. 1. Chambers seeks relief on the grounds that the Appellate Division's affirmance of his conviction of reckless endangerment in the first degree amounted to an "unreasonable application of clearly established federal law as determined by the United States Supreme Court" because his conviction was based on

10

insufficient evidence.  *Id.* at 10-11.  At the time that he filed the Petition, Chambers was "on parole under the supervision of the New York State Department of Corrections and Community Supervision . . . with a maximum expiration date of November 27, 2021."[3] *Id.* at 1-2.

The Richmond County District Attorney's Office opposed the Petition on October 19, 2020.  Dkt. 8.

On March 19, 2024, the case was reassigned to the undersigned.

## DISCUSSION

### I.    *Federal Review of State Convictions*

#### A.    *Applicable Law*

A federal court may not grant a habeas petition on a claim that was adjudicated on the merits in state court unless that adjudication:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

---

[3] Although Chambers was paroled on April 24, 2019, the Petition is not moot because of the collateral legal consequences that attach to his  felony conviction.  *See, e.g.*, *Perez v. Greiner*, 296 F.3d 123, 125 (2d Cir. 2002) ("[A] habeas petition challenging a criminal conviction is rendered moot by a release from imprisonment 'only if it is shown that there is no possibility that any collateral legal consequences will be imposed on the basis of the challenged conviction.'" (quoting *Sibron v. New York*, 392 U.S. 40, 57 (1968))).

28 U.S.C. § 2254(d)(1)-(2); *see Harrington v. Richter*, 562 U.S. 86, 97-98 (2011); *Waiters v. Lee*, 857 F.3d 466, 477 (2d Cir. 2017).  "[A] state court 'adjudicate[s]' a state prisoner's federal claim on the merits when it (1) disposes of the claim 'on the merits[]' and (2) reduces its disposition to judgment."  *Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001) (second alteration in original) (citing 28 U.S.C. § 2254(d)(1)).  Hence, when a claim is adjudicated on the merits, the state court's decision must be "accorded substantial deference."  *Fischer v. Smith*, 780 F.3d 556, 560 (2d Cir. 2015) (citing *Dolphy v. Mantello*, 552 F.3d 236, 238 (2d Cir. 2009)).  "A federal court may reverse a state court ruling only where it was 'so lacking in justification that there was . . . [no] possibility for fairminded disagreement.'"  *Vega v. Walsh*, 669 F.3d 123, 126 (2d Cir. 2012) (per curiam) (quoting *Harrington*, 562 U.S. at 103); *see also Wetzel v. Lambert*, 565 U.S. 520, 524 (2012) (per curiam) (quoting *Harrington*, 562 U.S. at 102).

A federal court cannot review a habeas petition unless the petitioner "has exhausted the remedies available" in state courts.  28 U.S.C. § 2254(b)(1)(A).  This requirement affords state courts the "opportunity to pass upon and correct alleged violations of its prisoners' federal rights."  *Jackson v. Edwards*, 404 F.3d 612, 619 (2d Cir. 2005) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)).  "This requires that the prisoner 'fairly present' his constitutional claim to the state courts, which he accomplishes 'by presenting the essential factual and legal premises of his federal constitutional claim to the highest state court capable of reviewing it.'"  *Jackson v.*

*Conway*, 763 F.3d 115, 133 (2d Cir. 2014) (quoting *Rosa v. McCray*, 396 F.3d 210, 217 (2d Cir. 2005)).

Moreover, "federal courts will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that 'is independent of the federal question and adequate to support the judgment.'" *Cone v. Bell*, 556 U.S. 449, 465 (2009) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)).  In other words, if the state court refused to consider an argument because it was procedurally barred under state law, the argument is barred from federal habeas review so long as the procedural bar is "adequate to support the judgment." *Murden v. Artuz*, 497 F.3d 178, 191-92 (2d Cir. 2007) (quoting *Jimenez v. Walker*, 458 F.3d 130, 138 (2d Cir. 2006)).  For an independent and adequate state ground to bar habeas relief, the state court rendering the judgment must "clearly and expressly state that its judgment rests upon a state procedural bar." *Whitley v. Ercole*, 642 F.3d 278, 286 (2d Cir. 2011) (quoting *Glenn v. Bartlett*, 98 F.3d 721, 724 (2d Cir. 1996)).

**B.**   *Analysis*

In the Petition, Chambers contends that the Appellate Division's determination that his conviction of reckless endangerment in the first degree was based on sufficient evidence is an unreasonable application of clearly established federal law as determined by the United States Supreme Court.  Dkt. 1 at 11. Specifically, he asserts that the evidence presented at trial regarding the December 2,

13

2015 high-speed car chase was insufficient to convict him of reckless endangerment in the first degree, which requires the People to establish that he acted with "depraved indifference to human life." *Id.*; *see also* N.Y. Penal Law § 120.25.  Chambers raised the same argument on direct appeal.  *Chambers I*, 92 N.Y.S.3d at 397.

### a.    *Procedural Bar*

As an initial matter, it is undisputed that Chambers has exhausted the remedies available in state court.  Dkt. 1 at 2; Dkt. 8 at 2.  And although on appeal the Appellate Division only cited New York cases when addressing Chambers's sufficiency-of-the-evidence claim, *see Chambers I*, 92 N.Y.S.3d at 397-98, its decision *does not* "rest[] upon a state-law ground that 'is independent of the federal question'" at issue.  *Cone*, 556 U.S. at 465 (quoting *Coleman*, 501 U.S. at 729).  The federal question is whether the government provided sufficient evidence for a jury to find Chambers guilty of reckless endangerment in the first degree beyond a reasonable doubt.  *See Jackson v. Virginia*, 443 U.S. 307, 323 (1979) ("The question whether a defendant has been convicted upon inadequate evidence is central to the basic question of guilt or innocence.  The constitutional necessity of proof beyond a reasonable doubt is not confined to those defendants who are morally blameless." (citing *Mullaney v. Wilbur*, 421 U.S. 684, 697-98 (1975))); *see also Echevarria-Perez v. Burge*, 779 F. Supp. 2d 326, 332-33 (W.D.N.Y. 2011) ("A weight of the evidence argument is a pure state law claim grounded in New York

Criminal Procedure Law § 470.15(5), whereas a legal sufficiency claim is based on federal due process principles." (citation and internal quotation marks omitted)).

Accordingly, Chambers's claim is not procedurally barred.  It does, however, fail on the merits.

> **b.**   *The Merits*

Here, the decisive question is whether Chambers acted with the state of mind required for reckless endangerment in the first degree -- that is, depraved indifference to human life.  N.Y. Penal Law § 120.25.

Chambers contends that his actions during the December 2, 2015 high-speed car chase do not constitute depraved indifference to human life.  Thus, he concludes that the evidence adduced at trial was legally insufficient to sustain his conviction.  Dkt. 1 at 10-11.  The Appellate Division considered this claim on direct appeal and held that in "[v]iewing the evidence in the light most favorable to the prosecution, we find that it was legally sufficient to establish the defendant's guilt of reckless endangerment in the first degree beyond a reasonable doubt." *Chambers I*, 92 N.Y.S.3d at 397 (citations omitted).  The Appellate Division also held, upon its independent review of the record, that it was "satisfied that the verdict of guilt as to th[e charged] crime was not against the weight of the evidence." *Id.* (citation omitted). Because the Appellate Division adjudicated Chambers's claim on the merits, its

determination is "accorded substantial deference." *Fischer*, 780 F.3d at 560 (citing

*Dolphy*, 552 F.3d at 238).

      "The requirement that guilt of a criminal charge be established by proof

beyond a reasonable doubt dates at least from our early years as a Nation." *In re*

*Winship*, 397 U.S. 358, 361 (1970).  In evaluating a sufficiency-of-the-evidence claim on

habeas review, a federal court must review all the evidence in the light most favorable

to the prosecution.  *Jackson*, 443 U.S. at 319.  The court must affirm the verdict if "any

rational trier of fact could have found the essential elements of the charged crime

beyond a reasonable doubt." *United States v. Rutigliano*, 790 F.3d 389, 400 (2d Cir. 2015)

(citing *United States v. Desnoyers*, 637 F.3d 105, 109 (2d Cir. 2011)).  In considering a

petition based on the sufficiency of evidence to support a state criminal conviction, the

court defers to the jury's assessment of "the weight of the evidence [and] the credibility

of witnesses." *Maldonado v. Scully*, 86 F.3d 32, 35 (2d Cir. 1996) (citations omitted).

      If the facts support conflicting inferences, the court "must presume -- even

if it does not affirmatively appear in the record -- that the trier of fact resolved any such

conflicts in favor of the prosecution[] and must defer to that resolution." *Jackson*, 443

U.S. at 326.  Thus, a habeas "petitioner bears a very heavy burden in convincing a

federal *habeas* court to grant a petition on the grounds of insufficiency of the evidence."

*Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 811 (2d Cir. 2000) (citing *United States v.*

*Soto*, 716 F.2d 989, 991 (2d Cir. 1983)).  Indeed, a federal court may overturn a state court

16

decision rejecting a sufficiency-of-the-evidence claim only if the state court decision was "objectively unreasonable." *Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (per curiam) (citation omitted).  Moreover, the "court[] must look to state law for 'the substantive elements of the criminal offense.'" *Id.* at 655.

    Under New York law, "[a] person is guilty of reckless endangerment in the first degree when, under circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person."[4]  N.Y. Penal Law § 120.25.  "The element of depraved indifference to human life comprises both depravity and indifference[] and has meaning independent of recklessness and the gravity of the risk created."  *People v. McMillon*, 816 N.Y.S.2d 167, 170 (2d Dep't 2006).  Depraved indifference, a culpable mental state, "is best understood as an utter disregard for the value of human life" -- that is, "a willingness to act not because one intends harm, but because one simply doesn't care whether grievous harm results or not."  *People v. Feingold*, 852 N.E.2d 1163, 1168 (N.Y. 2006) (quoting *People v. Suarez*, 844 N.E.2d 721, 730 (N.Y. 2005)).  But the knowing pursuit of risky behavior that endangers others will "rarely," on its own, establish depraved indifference.  *People v.*

---

[4] "A person acts recklessly with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur or that such circumstance exists."  N.Y. Penal Law § 15.05(3).  "The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation."  *Id.*

*Maldonado*, 18 N.E.3d 391, 395 (N.Y. 2014).  Rather, a person acting with depraved

indifference "does not care if another is injured or killed."  *Feingold*, 852 N.E.2d at 1168

(citation omitted).  Whether a person acts with depraved indifference is a "highly fact-

specific" inquiry that is "dependent upon the individual['s] . . . mental state," *People v.*

*Heidgen*, 3 N.E.3d 657, 666 (N.Y. 2013); however, "like any other mens rea," depraved

indifference can "be proved by circumstantial evidence," *Feingold*, 852 N.E.2d at 1169.

  Here, Chambers has not demonstrated that the evidence presented at trial

was insufficient to support a conviction of reckless endangerment in the first degree

related to the December 2, 2015 high-speed car chase.  Instead, a review of the evidence

shows that it was sufficient.  The relevant evidence includes:

- As officers tried to box in Chambers's car at the intersection of Notre Dame Avenue and Lamoka Avenue, Chambers struck Officers Hoxha and Rentas's car head-on, scraping its headlight and front bumper, Dkt. 9-11 at 45, 48;
- Without using his turn signal, Chambers turned onto Brookfield Avenue, a residential street, before driving past four stop signs, without stopping or breaking, at 40 to 50 miles per hour, *id.* at 51-57;
- At the intersection of Arthur Kill Road and Giffords Lane, with ten to fifteen parked cars lined up ahead of him and five to seven cars in the opposite traffic lane, Chambers went around the left side of the parked cars at 45 to 50 miles per hour, crossing the double yellow lines to drive on the oncoming traffic lane past the intersection, *id.* at 59-62;
- At the intersection of Arthur Kill Road and Clarke Avenue, with about ten cars in each of the two lanes ahead of him, Chambers entered the oncoming traffic lane at 40 or 45 miles per hour, causing an oncoming car to swerve out of his way and hit the curb, *id.* at 63-66;
- At the intersection of Richmond Road and Lighthouse Avenue, with cars stopped before him, Chambers again entered the oncoming traffic lane,

returning to his lane only after he ran a red light to cross the intersection at 55 to 60 miles per hour, *id.* at 68-70;

- Over a twenty-block stretch on Richmond Road, Chambers entered the oncoming traffic lane three or four times to avoid slowed or stopped cars; he also ran a red light, *id.* at 70-72;

- At the intersection of Richmond and Amboy Road, Chambers, without signaling and while cutting off another driver in the left-turn lane, turned left onto Amboy Road using the right-turn lane, Dkt. 9-12 at 8-11;

- At the intersection of Amboy Road and New Dorp Lane, Chambers, with Officers Hoxha and Rentas behind him, crossed the double-yellow lines onto the left-side lane and maneuvered his Mazda between two cars, which caused three or four pedestrians about to cross the street to jump back onto the sidewalk and an oncoming car to drive onto the sidewalk, Dkt. 9-11 at 73-78;

- Over the following nine blocks, Chambers crossed onto the oncoming traffic lane several times to avoid slowed or stopped cars, *id.* at 79-80;

- At the intersection of Amboy Road and Todt Hill Road, a winding residential road where traffic flows in both directions, Chambers crossed the double yellow lines and turned left at a red light without signaling, *id.* at 81-84;

- On Todt Hill Road, Chambers drove in the middle of the street, between the double yellow lines, as cars traveling in both directions swerved out of his way, *id.* at 82-84;

- Chambers sideswiped a minivan, which almost fishtailed into Officers Hoxha and Rentas's car, *id.* at 92-94; and

- On Four Corners Road, Chambers ran a red light and sideswiped the car of Officer Bowman, Dkt. 9-12 at 16; Dkt. 9-20 at 12-19.

A jury surely could have concluded from these facts that Chambers did not care if anyone was hurt or even killed as he tried -- successfully -- to escape from the police officers and that, therefore, he acted with depraved indifference.

Chambers relies principally on *Maldonado*, in which the New York Court of Appeals found the evidence to be insufficient to support a depraved indifference murder conviction because the defendant, while fleeing from the police, "'actively

attempted to avoid hitting other vehicles' by swerving, conduct which establishes a lack of depraved indifference."  18 N.E.3d at 395 (alteration adopted).  Chambers argues that because he, like the defendant in *Maldonado*, "purposely made efforts to avoid other cars," the People did not prove the statutorily required mens rea of depraved indifference.  Dkt. 10 at 2.  Chambers's reliance on *Maldonado* is misguided because the facts are distinguishable in at least three ways.

First, the defendant in *Maldonado* was unfamiliar with the roads he was driving on, which led to him getting "lost" and mistakenly driving on one-way streets with oncoming traffic.  18 N.E.3d at 394.  Here, Chambers makes no such claim, *see* Dkts. 1, 10, and the record suggests that he was familiar with the roads -- this was his second chase in the area in a matter of a few days.  *See generally* Dkts. 8, 9-11, 9-12, 9-13, 9-14, 9-20.

Second, in *Maldonado*, the defendant's conduct of driving in the oncoming traffic lane was "episodic," "brief," and done "in order to pass other cars, not as part of a deadly game."  18 N.E.3d at 396.  Although Chambers initially made similar, sporadic efforts to avoid slowed or stopped cars, he appeared to have ceased any such effort once he reached Todt Hill Road.  Dkt. 9-11 at 81-94; Dkt. 8 at 12-13.  Indeed, at nighttime, Chambers drove for *sixteen blocks*, at 40 to 50 miles per hour, in between the double-yellow lines of a narrow, winding two-way residential street.  Dkt. 9-11 at 81-94; Dkt. 8 at 12-14.  He drove "in between traffic," like he was "parting the sea," with "cars

[traveling in both directions] moving out of [his] way." Dkt. 8 at 13. Unlike the

defendant in *Maldonado*, Chambers failed to "repeatedly swerve[] to avoid hitting

pedestrians and cars" or return to his own lane after short periods in the oncoming

traffic lane. *Compare Maldonado*, 18 N.E.3d at 394 (describing the defendant's conduct

during the high-speed car chase), *with* Dkt. 9-11 at 81-94 (outlining Chambers's conduct

on Todt Hill Road during the high-speed car chase). In fact, Chambers sideswiped two

cars during the high-speed car chase. Dkt. 9-11 at 92-94; Dkt. 9-12 at 16. The record

makes clear that Chambers's driving and conduct constituted "a high speed game of

chicken[] with complete disregard for the value of the lives that [we]re thereby

endangered." *Heidgen*, 3 N.E.3d at 667 (explaining that an individual who engages in

such conduct "is undoubtedly an individual whose culpability is the equivalent of an

intentional murderer").

　　　　　Third, upon seeing more people and traffic ahead while going against the

flow of traffic, the defendant in *Maldonado* elected to crash his car into a parked vehicle

to "end[] the chase" and "avoid hurting anyone else." 18 N.E.3d at 394, 398. Here, by

contrast, Chambers did not end the chase. Instead, at two intersections -- Arthur Kill

Road and Clarke Avenue and Amboy Road and New Dorp Lane, he made no effort to

swerve around pedestrians who had to jump out of the way or cars that had to swerve

out of his way. Dkt. 9-11 at 75-78; Dkt. 8 at 13. In sum, Chambers's conduct was neither

"brief" nor done to overtake other vehicles. *See Maldonado*, 18 N.E.3d at 396 (explaining

that the defendant's conduct did not amount to depraved indifference to human life because he (1) "drove in the wrong lane for brief periods of time in order to pass other cars, not as part of a deadly game" and (2) "immediately returned to the proper lane once clear of congestion in order to avoid hitting other vehicles").  Chambers's actions (and inaction) evinced not only a willingness "to take a grossly unreasonable risk to human life" but also a lack of "care [for] how the risk turn[ed] out."  *People v. Lewie*, 953 N.E.2d 760, 766 (N.Y. 2011) (citation omitted).  Accordingly, Chambers was not just reckless; he was depravedly indifferent to human life.  *See id.*; *see also Maldonado*, 18 N.E.3d at 395.

    *People v. Herrera*, 162 N.Y.S.3d 61 (1st Dep't 2022), is instructive.  In *Herrera*, the defendant, who was fleeing from the police, ran several red lights as he drove fourteen blocks against oncoming traffic on a major roadway before driving onto a connected parkway on which cars were going even faster.  N.Y.S.3d at 63-64.  After entering the parkway, the defendant failed to stop, slow down, or swerve to avoid oncoming cars for over seven blocks.  *Id.* at 63.  Even though the defendant drove recklessly throughout the police chase, the court based its finding of sufficient evidence for a conviction of depraved indifference to human life on a *portion* of the chase.  *Id.*  It explained: "the evidence supports the conclusion that *at the time* defendant entered the [p]arkway instead of exiting from the [h]ighway, he had no regard for the risk of death to others."  *Id.* (emphasis added) (citing *Heidgen* 3 N.E.3d at 667).  Here, similarly,

Chambers's depraved indifference to human life is evident from his sixteen-block drive that began on Todt Hill Road.  Dkt. 9-11 at 81-94; Dkt. 8 at 12-13.  Moreover, other portions of the high-speed car chase, where he failed to swerve out of the way of cars and pedestrians, also support a finding of depraved indifference to human life.  Dkt. 8 at 5-11.

Chambers is correct: the court must consider "the totality of [his] conduct" to determine his mens rea, Dkt. 10 at 3.  *People v. Williams*, 55 N.Y.S.3d 381, 387 (2d Dep't. 2017) (viewing the facts of the case in their totality to determine whether the defendant's conduct was "sufficiently egregious to support a conviction of depraved indifference murder").  But the totality of Chambers's conduct includes the portions of the five-and-a-half-mile chase in which he *failed* to "mitigate the consequences of his reckless driving" by "actively" swerving to avoid hitting other vehicles and pedestrians *in addition* to the portions in which he did do so.  *Maldonado*, 18 N.E.3d at 395.  On this record, viewing the evidence in the light most favorable to the prosecution, "any rational trier of fact could have found the essential elements of the charged crime beyond a reasonable doubt."  *Rutigliano*, 790 F.3d at 400 (citing *Desnoyers*, 637 F.3d at 109).  Thus, Chambers fails to meet the "very heavy burden" required to show that the Petition should be granted on the basis of insufficient evidence to support his conviction of reckless endangerment in the first degree.  *Fama*, 235 F.3d at 811 (citation omitted).  Accordingly, because there was sufficient evidence from which a jury could

conclude that Chambers acted with depraved indifference, his claim is meritless, and habeas relief must be denied.

### CONCLUSION

Chambers has failed to show any basis for relief under 28 U.S.C. § 2254. Accordingly, the Petition is denied.  Additionally, I decline to issue a certificate of appealability because Chambers has not made a substantial showing of the denial of a constitutional right.  *See* 28 U.S.C. § 2253(c)(2).  Pursuant to 28 U.S.C. § 1915(a)(3), I certify that any appeal taken from this decision and order would not be taken in good faith.

The Clerk of Court is respectfully directed to mail a copy of this memorandum decision and the judgment to Chambers at his last address of record.

SO ORDERED.

Dated:  New York, New York
        August 21, 2024

_____

DENNY CHIN
United States Circuit Judge
Sitting By Designation